UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| DAN SEUM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:17-cv-00069-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DAVID OSBORNE, in his official capacity | ) | **&** |
| as Acting Speaker of the Kentucky House of | ) | **ORDER** |
| Representatives and Co-Chairman of the | ) | |
| Legislative Research Commission,[1] | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DAVID BYERMAN, in his official capacity | ) | |
| as Director of the Legislative Research | ) | |
| Commission, | ) | |
| | ) | |
| Defendants. | ) | |

**** **** **** ****

This matter is before the Court on Defendants' Motion to Dismiss for lack of subject

matter jurisdiction, failure to state a claim upon which relief can be granted, and insufficient

service of process / lack of personal jurisdiction. [R. 10.] For the reasons that follow,

Defendants' Motion to Dismiss will be DENIED in part and GRANTED in part.

**I**

Plaintiff Dan Seum, Jr., a resident of Kentucky, is a citizen advocate and was once the

Director of Veteran's Affairs at Kentucky for Medicinal Marijuana (Ky4MM), "a non-profit

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, David Osborne, as the Acting Speaker of the Kentucky House of Representatives and Co-Chairman of the Legislative Research Commission, is automatically substituted, in his official capacity, for Jeff Hoover as Defendant in this action.

organization working to legalize medicinal use of cannabis in Kentucky." [R. 1 at 1.] He states that on February 17, 2017, he was engaged in conversation with other visitors and advocates on the third floor of the Capitol Annex when he, in context, quoted a racially charged statement accredited to a former head of a federal law enforcement agency. [*Id.* at 4.] Approximately two weeks later, Seum received a letter from Defendant Byerman advising Seum that, at the direction of Defendant Hoover, Seum was permanently banned from the third floor of the Capitol Annex due to offensive comments Seum made in front of employees of the Legislative Research Commission (LRC). [*Id.* at 6. *See also* R. 1-1 at 1.]

Seum brings this 42 U.S.C. § 1983 action alleging violations of his constitutional rights under the First and Fourteenth Amendments of the United States Constitution and Sections One and Two of the Kentucky Constitution. [*See generally* R. 1.] His four claims include a violation of his right to petition and access, a violation of his right to freedom of speech, First Amendment retaliation, and a violation of his due process rights. [*Id.*] Seum claims that when Defendants Hoover and Byerman, acting in their official capacities, unilaterally and arbitrarily banned Seum from the third floor of the Capitol Annex, they infringed upon Seum's rights to freedom of speech and to petition state lawmakers. [*Id.* at 2, 10.] Further, Seum alleges the permanent ban served as retaliation for the content of his speech and was "designed to intimidate the free exercise of Plaintiff's rights." [*Id.* at 11.] Lastly, Seum argues that the ban, which was imposed arbitrarily and maliciously, violated both his substantive and procedural due process rights because the ban came without either prior notice and an opportunity to be heard on the allegations or any means of review, redress, or appeal. [*Id.* at 7, 11-12.]

At all relevant times, Defendant Jeff Hoover was the Speaker of the Kentucky House of Representatives and, in that capacity, served as co-chairman of the LRC. *See* KRS 7.090(2).

Defendant David Byerman served as the LRC Director.  According to state law, the LRC is an "independent agency in the legislative branch of state government, which is exempt from control by the executive branch and from reorganization by the Governor.  The Commission shall have the duties, responsibilities, and powers assigned to it or authorized it by the General Assembly, by statute, or otherwise."  KRS § 7.090(1).

Defendants do not contest that they banned Plaintiff from the third floor of the Capitol Annex, but state the action was taken following an investigation that substantiated an LRC employee's complaint about Seum's comments.  [R. 10-1 at 5.]  According to Defendants, "the investigation determined that one or more LRC employees found Plaintiff's use of racially charged language in their private workplace to be inappropriate and offensive conduct related to an individual's race and / or ethnicity."  [*Id.*]  Defendants state the sanction was imposed "to avoid any potential future harassment of the LRC's employees by the Plaintiff."  [*Id.*]

Defendants move the Court to dismiss the case on a myriad of theories.  First, Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) arguing the Court lacks subject matter jurisdiction because: (1) Seum lacks standing to bring this suit; (2) this case presents a nonjusticiable political question; (3) sovereign immunity protects Defendants; (4) legislative immunity protects Defendants; and (5) the Noerr-Pennington Doctrine bars Seum's claims.  [R. 10-1 at 7-24.]  Next, Defendants argue this case should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because Seum fails to state a claim for which relief can be granted.  [*Id.* at 24-36.]  Lastly, pursuant to Fed. R. Civ. P. 12(b)(2) and (5), Defendant's maintain they have not been properly served and, therefore, the Court does not have personal jurisdiction over the Defendants.  [*Id.* at 36-40.]  The matter has been fully briefed and is now ripe for review.

## II

### A

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) come in two varieties: a facial attack or a factual attack. *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading." *Id.* When a motion raises a facial attack, the Court must accept all the "allegations in the complaint as true," and "if those allegations establish federal claims, jurisdiction exists." *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When the 12(b)(1) motion factually attacks subject matter jurisdiction, "no presumptive truthfulness applies to the allegations," and the court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330. All of Defendants' 12(b)(1) arguments are properly analyzed below as facial attacks on subject matter jurisdiction.

### 1

Defendant's first challenge Seum's Article III standing, which is a facial attack on subject matter jurisdiction. *See Gaylor v. Hamilton Crossing CMBS*, 582 Fed. App'x 576, 579 (6th Cir. 2014). "Standing is a threshold question in every federal case." *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III's "irreducible constitutional minimum" of standing has three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must: (1) have suffered "an 'injury-in-fact' – an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual an imminent, not conjectural and hypothetical;" (2) show that the injury is "fairly traceable to the challenged action of the defendant;" and (3) show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these three elements." *Lujan*, 504 U.S. at 561.

Seum sufficiently pleads facts – taken in the light most favorable to him – that satisfies the mandates of Article III standing. First, Seum alleges an injury in fact that is both concrete and particularized as well as actual and imminent. Seum charges, and Defendants concede, that Seum was permanently banned from the third floor of the Capitol Annex. [*See generally* R. 1; R. 10-1 at 5.] This banishment, according to Seum, invaded his constitutionally protected First Amendment rights. [R. 1 at 9-10.] Next, Seum has shown that the banishment is directly tied to the acts of Defendants and, in fact, Seum attached his banishment letter to his Complaint. [R. 1-1.] Lastly, Seum argues that his injury would be redressed by a favorable ruling. [R. 15 at 11 ("The declaratory and injunctive relief sought from this Court would remove the ban and therefore redress Seum's injury.").] Because the threshold question of standing presents a facial attack on subject matter jurisdiction and, as such, the Court accepts all allegations in the Complaint as true, the Court finds Seum has meet the requirements to establish standing.

**2**

Defendants next argue that the Court lacks subject matter jurisdiction because this case presents a nonjusticiable political question. [R. 10-1 at 11-14.] Defendants seem to argue that Seum's banishment is a product of its legislatively enacted House Rule 72, which "restricted access to the private office space on the third floor of the Capitol Annex to members, employees,

and authorized guests." [*Id.* at 13.] However, Seum avers that House Rule 72 does not mandate

banishment, and "the fact that Kentucky's House of Representatives decides to restrict access to

its legislators and apply that restriction on an individual ad hoc basis, without process and based

on a vague standard of conduct," does not present a nonjusticiable political question. [R. 15 at

12.]

A nonjusticiable political question is presented when one of the following is

"inextricable from the case":

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate
> political department; (2) or a lack of judicially discoverable and manageable
> standards for resolving it; (3) or the impossibility of deciding without an initial
> policy determination of a kind clearly for nonjudicial discretion; (4) or the
> impossibility of a court's undertaking independent resolution without expressing
> lack of the respect due coordinate branches of government; (5) or an unusual need
> for unquestioning adherence to a political decision already made; (6) or the
> potentiality of embarrassment from multifarious pronouncements by various
> departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). Importantly, Seum does not challenge the

constitutionality or enactment of House Rule 72 or House Resolution 2; Seum simply challenges

the imposition of an unequivocal and permanent ban. Thus, the Court is not asked to consider

the constitutionality of these legislative Rules. For that reason, the instant case does not present

a nonjusticiable political question.

Defendants cite as support *Consumers Union of U.S., Inc. v. Periodical Correspondents'*

*Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975), which, even if analogous, is nonbinding on the Court.

*Consumers Union*, though, is distinguishable from the facts presented here. In *Consumers*

*Union*, a consumer's organization sought accreditation for its publication from the Periodical

Correspondents' Association, which would have granted the publication and its correspondents

membership to the Periodical Press Galleries of the Congress. *See Consumers Union*, 515 F.2d

at 1342. Access or denial of membership and accreditation was within the authority of the Executive Committee of the Association. *Id.* "Regulations governing the management of the galleries . . . are promulgated by Congress, which retains the right of final approval of applications for admissions to the galleries." *Id.* at 1344. The House and Senate alike enacted numerous rules governing accreditation and access to its galleries. *Id.* Ultimately, Consumers Union was denied accreditation by the Association's Executive Committee, which restricted Consumers Union's access to the galleries. *See generally id.* Consumers Union challenged this decision, and the United States Court of Appeals for the District of Columbia Circuit held,

> The accreditation policy here did not place the appellee in any less advantageous position than the public or the press generally; limitations were based upon distinctions applied to [Consumers Union] and others in similar situations; [Periodical Correspondents' Association] . . . were agents acting within the sphere of legitimate legislative activity; beyond declining to accredit Consumer Reports, none of the appellants took any action or enforced any orders against appellee, and the internal rules involved constituted a demonstrable constitutional commitment to the legislative branch of government.

*Id.* at 1346-47.

Here, Seum was not seeking membership to an association that would have granted him access to certain areas of the Capitol Annex. Indeed, the facts of the Complaint support a finding that Seum, on numerous occasions, had been granted access to the third floor of the Capitol Annex without belonging to any exclusive association. *Consumers Union* challenged the constitutionality of the Rules Governing Periodical Press Galleries. *See id.* at 1346. Seum, however, does not challenge the constitutionality of the Rule under which the Defendants claim the ban is appropriate, rather he challenges the ban itself.

Additionally, the ban imposed upon Seum placed him in a less advantageous position than the public or other advocates who had attained special access authorization to meet with legislators on the third floor of the Capitol Annex.

Lastly, whereas *Consumers Union* required specific accreditation and membership – which is governed by House and Senate Rules – before accessing certain areas of the House and Senate, those facts are not found here where any individual with "specific access authorization" may be granted access to the third floor of the Capitol Annex. [*Compare Consumers Union*, 515 F.2d at 1343-45, *with* R. 10-1 at 3.] The facts of the Complaint, taken in the light most favorable to Seum, do not indicate, as Defendants suggest, that this case presents "a textually demonstrable constitutional commitment of the issue to a coordinate political department."

**3**

Defendants argue next that Seum's claims are barred by sovereign immunity. They are not. Generally, states are immune from claims brought against them by private persons in federal court. U.S. CONST. amend. XI; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). The Eleventh Amendment protects states against all types of claims, "whether for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012). States are protected by the Eleventh Amendment even "when only individual state officials are the nominal defendants but the state is the real, substantial party in interest." *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984); *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("Individuals sued in their official capacities stand in the shoes of the entity they represent."); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").

There are three exceptions to Eleventh Amendment immunity. First, Congress may abrogate a state's immunity pursuant to its Fourteenth Amendment powers, *see Alden v. Maine*, 527 U.S. 706, 756 (1999); second, a state may waive its immunity, *see Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011); and third, a state's waiver may be invalidated under the exception found in *Ex Parte Young*, 209 U.S. 123 (1908). For this sovereign immunity analysis, it is important to note that Seum seeks a declaratory judgment and injunctive relief [*see* R. 1 at 12], which places only the *Ex Parte Young* exception in question.

Under *Ex parte Young*, individuals who are "officers of the state" who are violating or threatening to violate the Federal Constitution "may be enjoined by a Federal court of equity from such action." 209 U.S. at 155-56. Claims brought under *Ex Parte Young* cannot provide "retroactive relief," but can only provide prospective relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). A "court may enter a prospective suit that costs the state money . . . if the monetary impact is ancillary, i.e., not the primary purpose of the suit." *Boler v. Early*, 865 F.3d 391, 413 (6th Cir. 2017). Put another way, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). To make the determination of whether the relief sought is prospective or retroactive, the Court looks at whether "money or the non-monetary injunction is the primary thrust of the suit." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008). It follows that injunctive relief pursuant to the *Ex Parte Young* exception is only available against the state officers and not the state itself. *Lawson v. Shleby Co., Tenn.*, 211 F.3d 331, 334 (6th Cir. 2000).

Here, Seum invokes his rights under the First and Fourteenth Amendments by alleging Defendants infringed upon his rights to petition, access, and free speech without due process.

[R. 1.] He also makes a claim of First Amendment retaliation. [*Id.*] Seum seeks "a declaratory judgment that the ban imposed . . . is unconstitutional," and he hopes the Court will "enjoin the Defendants, their employees, agents, and all others acting in concert or in participation with them, from enforcing the ban. . . ." [*Id.* at 12] Thus, the main thrust of Seum's suit is non-monetary, and the relief sought is prospective. *See S & M Brands, Inc.*, 527 F.3d at 510. This falls squarely within the *Ex Parte Young* exception; therefore, Seum's claims are not barred by Eleventh Amendment immunity.

**4**

Legislative immunity, which Defendants also invoke in their Motion to Dismiss, acts as an absolute bar to § 1983 claims when legislators act within "the sphere of legitimate legislative activity." *See Arabbo v. City of Burton*, 689 Fed. App'x 418, 420 (6th Cir. 2017) (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). "[T]he determination of whether an activity is 'legislative' must be made without regard to the legislators' subjective intent." *Canary v. Osborn*, 211 F.3d 324, 329 (6th Cir. 2000) (citing *Bogan*, 523 U.S. at 54). Thus, the determination "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Parker v. Laurel Cty. Det. Ctr.*, No. Civ.A. 605-113-DCR, 2005 WL 1917149, *3 (E.D. Ky. Aug. 9, 2005) (quoting *Kaahumanu v. County of Maui* 315 F.3d 1215 (9th Cir. 2003)). For the purposes of § 1983, a court can determine whether an act is legislative by considering four non-mutually-exclusive factors: "(1) whether the act involves *ad hoc* decision making, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Parker*, 2005 WL 1917149, *3 (quoting *Kaahumanu*,

315 F.3d at 1220).  Defendants bear the burden of establishing they are protected by legislative immunity.  *Canary*, 211 F.3d at 328.

Defendants argue that their adoption of House Resolution 2 and, by extension, House Rule 72, which restricts access to the third floor of the Capitol Annex to employees, members, and those with special access authorization from an employee or member, should be classified as a legitimate legislative activity.  [R. 10-1 at 17-18.]  Seum's permanent and unequivocal ban, the argument goes, is a "direct implementation of House Rule 72."  [*Id.* at 20.]  Seum does not contest the enactment of House Resolution 2 or House Rule 72, however, he argues the individualized ban is not a legislative activity and should be classified as an administrative act.  [R. 15 at 15.]  Seum contends the banishment was "an ad hoc decision made without deliberation or vote by either chamber of the General Assembly."  [*Id.*]  For support, Seum cites *Legislative Research Comm'n By and Through Prather v. Brown*, 664 S.W.2d 907 (Ky. 1984), which states, in part, "Whatever else the LRC my do, it may not legislate."  *Legislative Research Comm'n By and Through Prather*, 664 S.W.2d at 911.

The Court finds that the act at issue here is the Defendants' permanent and unequivocal ban; it is not the process by which Defendants assert they enacted House Rule 72, which, by its terms, does not ban anyone and only restricts access to certain areas of the Capitol Annex.  In considering the four factors articulated above and taking all facts alleged in the Complaint as true, the Court determines that the ban is not a legislative act.  First, the ban was an ad hoc decision.  The decision to ban Seum allegedly was made following an investigation, but the ban was directed at and affected only Seum; it did not further the formulation of any policy.  Second, the ban applies only to Seum and not to the public at large.  While the House Rule, under which Defendants claim to have implemented the ban, applies to the public, Seum does not challenge

the constitutionality of the Rule; he challenges the ban. Third, banning a specific individual from an area of the Capitol Annex is not formally legislative in character. And, lastly, the act of banning Seum bears no hallmarks of traditional legislation. Moreover, Defendants' reported subjective intent of protecting LRC employees from any future harassment by Seum is immaterial to this analysis. *See Canary*, 211 F.3d at 329. Provided that this 12(b)(1) motion presents a facial attack on subject-matter jurisdiction, which mandates the Court to take the facts as alleged as true, the Court finds that the act in question was not legislative in nature and, therefore, Defendants have not carried the burden of establishing legislative immunity.

**5**

The last 12(b)(1) argument asserted by Defendants is that Seum's claims are barred by the Noerr-Pennington doctrine. [R. 10-1 at 22-24.] Defendants contend that they "have an equal right to participate in the legislative process without liability. . . ." [*Id.* at 24.] They reason that "although [Seum] has a right to petition the government, he cannot bring claims against the Speaker or any other legislator, or against the LRC, or the Director, because he fears that his advocacy will not be effective." [*Id.* at 23.] This misinterprets Seum's claims. Seum alleges constitutional infringement of his rights to petition and access the government and his right to free speech. He makes no allegations related to the success or ineffectiveness of his advocacy.

Further, the Court is unclear as to how exactly Defendants claim the Noerr-Pennington doctrine protects them. As the Sixth Circuit has stated,

> The *Noerr-Pennington* Doctrine allows businesses to combine and lobby to influence legislative, executive, or judicial branches of government or administrative agencies without antitrust or § 1983 liability, because the First Amendment's right of petition protects such activities. The doctrine immunizes parties from liability under antitrust laws or § 1983 for actions taken when petitioning authorities to take official action, even where the petitioning activity has the intent or effect of depriving another of property interests, except under 'very limited circumstances.

*Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 658 (6th Cir. 2004) (citations omitted). As Seum indicates in his Response [R. 15 at 16-17], the Noerr-Pennington doctrine protects those who petition the government. *See, e.g., VIBO Corp., Inc. v. Conway*, 669 F.3d 675 (6th Cir. 2012); *Westmac, Inc. v. Smith*, 797 F.2d 313 (6th Cir. 1986). Consequently, the Court finds the Noeer-Pennington doctrine inapplicable to the facts of this case.

## B

Federal Rule of Civil Procedure 12(b)(c) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted. In making such a motion, "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to survive a motion to dismiss, the complaint "must contain either direct or inferential allegations" establishing each material element required for recovery under some actionable theory. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (internal citation and quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *DirecTV, Inc.*, 487 F.3d at 476 (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (citation omitted). Moreover, as is now well known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Cor. V. Twombly*, 550 U.S. 544, 570

(2007)).  In other words, the facts that are pled must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *DirecTV, Inc.*, 487 F.3d at 476 (citing *Twombly*, 550 U.S. at 556).  Thus, the plaintiff must at least "provide the grounds of his entitlement to relief, [which] requires more than labels and conclusions. . . ."  *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

When ruling on a 12(b)(6) motion, a district court may not generally consider matters presented outside the pleadings unless the court converts the motion into one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012).  The district court, however, also has the discretion to ignore such evidence and resolve the motion solely on the basis of the pleadings.  *Heinrich*, 668 F.3d at 405; *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502-03 (6th Cir. 2006) (collecting cases).  Certain matters beyond the allegations in the complaint such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citations and internal quotation marks omitted).  Additionally, the Sixth Circuit has held that when a *defendant* attaches undisputed documents to a motion to dismiss, they "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Id.* (citations and internal quotation marks omitted).

Defendants' first 12(b)(6) argument is that Seum's Complaint "fails to state a claim that his rights to petition and access and to free speech have been violated." [R. 10-1 at 24.] This argument is premised on the classification of the third floor of the Capitol Annex as a non-public forum. [*Id.* at 26.] As a non-public forum, Defendants state, Seum's restriction need only satisfy a rational-basis test, that is the restriction must be viewpoint neutral and reasonable under the circumstances. [*Id.* at 27.]

However, at this pleading stage, Seum only need to allege facts, when accepted as true, that are sufficient to state a claim upon which relief can be granted. He meets that standard. In his Complaint, Seum states, "The Capitol Annex is a public state government building, the third floor of which houses administrative offices and meeting rooms for legislators and members of legislative subcommittees." [R. 1 at 4.] He further alleges,

> The third floor of the Capitol Annex is open to the public to allow access to legislative representatives for the purpose of meeting with those representatives to present political thoughts and opinions designated to affect proposed legislation. Plaintiff Seum has a general right of access to governmental property opened and generally made available to the public for advocating political positions and ideas to government lawmakers. Plaintiff's presence on the third floor of the Capitol Annex on February 17, 2017 as well as many other occasions, was for the purpose of petitioning his government representatives, advocating a political cause, and the free communication of political thoughts and opinions on matters of public opinion and was therefore protected activity under the United States and Kentucky Constitutions.

*Id.* at 5. When accepted as true, these allegations suggest the third floor of the Capitol Annex is a designated public forum. *See Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985); *Helms v. Zubaty*, 495 F.3d 252, 255-56 (6th Cir. 2007).

As a designated public forum, any content-based restriction must meet strict scrutiny. *Helms*, 495 F.3d at 256. The facts as alleged and accepted as true indicate this restriction is

content-based. [*See* R. 1-1 ("This ban is . . . in response to the offensive comments that you made on February 17, 2017, in front of staff of the Legislative Research Commission.").] Therefore, the restriction must be narrowly tailored and serve a compelling state interest. *See Cornelius*, 473 U.S. at 800. Although Defendants state the purpose of the ban was "to avoid any potential future harassment of the LRC's employees" [*see* R. 10-1 at 5], the unequivocal and permanent ban of Seum from the third floor of the Capitol Annex suggests this restriction is not narrowly tailored to serve that state interest. While there remains factual disputes regarding these allegations, accepting the Complaint's facts as true requiring denial of Defendants' motion on this issue.

**2**

Defendants' next argue Seum has failed to state that he has been subjected to First Amendment retaliation. [R. 10-1 at 30.] To establish a claim of First Amendment retaliation a plaintiff must prove "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [plaintiff's] protected conduct.'" *Hill v. Lappin,* 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc)). "Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If that showing is made, the burden shifts to the defendant to show that the same action would have been taken absent plaintiff's exercise of protected conduct. *Id.*

The first question is whether Seum engaged in protected conduct. Defendants' vehemently contend he did not. [R. 10-1 at 30.] However, Seum argues he was fundamentally

engaged in protected, political speech.  [R. 15 at 30-31.]  Seum's Complaint states that as a part of his advocacy for medicinal marijuana he "often relates information about Harry Anslinger, the first commissioner of the Federal Bureau of Narcotics," who is attributed with the following quote:

> Most marijuana smokers are colored people, jazz musicians, and entertainers.  Their satanic music is driven by marijuana, and marijuana smoking by white women makes them want to seek sexual relations with Negroes, entertainers, and others.  It is a drug that causes insanity, criminality, and death—the most violence-causing drug in the history of mankind.

[R. 1 at 4.]  According to Seum, "[a] recognized part of Anslinger's approach to advocating the criminalization of cannabis was an appeal to racism."  [*Id.*]  The Court agrees with Seum that, in context, his speech is protected political speech.  *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 185 (6th Cir. 2008).  *See also Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186-87 (1999) (stating that "'interactive communication concerning political change'" is "'core political speech'" and that "First Amendment protection for such interaction, we agreed, is 'at its zenith'").

The second question is whether Defendants subjected Seum to an adverse action.  Again, Defendants claim they did not.  [R. 10-1 at 30-31.]  Defendants' argument is that Seum's "generalized statements of 'irreparable harm' with nothing more do not establish" the requisite adverse action to sustain a retaliation claim.  [*Id.* at 32.]  Seum disputes this claim and states, "[p]ermanently banning Seum from the third floor of the Capitol Annex essentially prevents him from any further political advocacy there. . . . It is also clear that the ban would chill the First Amendment expression of an ordinary person."  [R. 15 at 31.]  Seum's Complaint states "the ban has the effect of restricting Plaintiff's access to legislators and members of the General Assembly for the purposes of petitioning the state on matters of public and political concern. . . ."  [R. 1 at

8.]  Taking as true the facts alleged in the Complaint, Seum has sufficiently pled the requisite retaliation adverse action.

The last question to be considered is whether Seum can show that the adverse action was motivated at least in part by his protected conduct.  While Defendants contest even this prong of the test, Seum clearly makes that connection.  Seum attached to his Complaint Defendants' letter banning him from the third floor of the Capitol Annex.  [*See* R. 1-1.]  That letter indicates that the unequivocal and permanent ban was "in response to offensive comments that [Seum] made on February 17, 2017 in front of staff of the Legislative Research Commission."  [*Id.*]  The letter further explains Seum's allegedly offensive language, which mirrors almost identically the language Seum attributes to Anslinger in Seum's purported advocacy for medicinal marijuana. [*Compare* R. 1-1, *with* R. 1 at 4.]  Accepting Seum's version of the facts, Seum has shown that the ban was, at least in part, motivated by his advocacy speech.

Because the Court finds that Seum sufficiently plead the elements of a First Amendment retaliation claim, the burden shifts to Defendants to show they would have ban Seum absent his protected political speech.  Defendants make no effort to do so.  [*See* R. 10-1 at 30-32.]  As such, Seum's First Amendment retaliation claim will survive this motion.

**3**

The last 12(b)(6) argument Defendants assert is that Seum failed to state a claim that his Fourteenth Amendment due process rights, as well as his state-equivalent rights, have been violated.  [R. 10-1 at 32-36.]  The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law. . . . "  U.S. Const. amend. XIV, § 1.  The Fourteenth Amendment's Due Process Clause has a substantive component that is separate and distinct from its procedural component.  *Howard v. Grinage*, 82 F.3d 1343, 1349

(6th Cir. 1996). The substantive component "serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Id.* (citations omitted). The goal of the procedural component "is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process." *Id.* "The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner.'" *Id.* (quoting *Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983), *aff'd*, 470 U.S. 532 (1985)).

In their Motion to Dismiss, Defendants claim, (1) Seum's "substantive due process claim is duplicative to his First Amendment claim and must be dismissed"; (2) Defendants "did not violate [Seum's] procedural due process rights"; and (3) Defendants "did not abridge [Seum's] privileges and immunities as a citizen under the Fourteenth Amendment or Section 2 of the Kentucky Constitution." [*Id.*] Those arguments will be taken in turn.

**a**

Defendants cite *Kiser v. Kamdar*, 831 F.3d 784 (6th Cir. 2016) for the proposition that where the facts alleged support a charge under the explicit text of an Amendment, a plaintiff cannot sustain claims under both the Amendment and substantive due process. [R. 10-1 at 33.] For further support, Defendants cite *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891 (6th Cir. 2001), which reiterated the Supreme Court's holding that "a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable." *Bradenburg*, 253 F.3d at 900 (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Seum argues that his substantive due process claims are distinct from his First Amendment claims because the ban, which deprives him of a liberty interest, shocks the

conscience.  [R. 15 at 33-34.]  For support, Seum looks to *Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002), which he cites for the proposition "that where analysis under a particular amendment does not provide the appropriate analytical framework for fully evaluating the constitutionality of a particular claim, the more general substantive due process analysis is applied."  [R. 15 at 34.]

Seum's argument fails because his § 1983 First Amendment claims, which have already been analyzed by the Court and which will survive dismissal, do in fact provide the appropriate analytical framework for fully evaluating his claims.  As *Brandenburg* counsels, "almost all § 1983 claims rely on the substantive component of the Due Process Clause because it is through that vehicle that fundamental rights are incorporated against the states."  *Brandenburg*, 253 F.3d at 900 (citation omitted).  Nothing about Seum's First Amendment claims so shocks the conscience that the facts alleged would lend to a stand-alone substantive due process claim.  As such, because the substantive arguments Seum sets forth in his First Amendment and retaliation allegations are properly asserted through a § 1983 claim, his substantive due process claim is duplicative and should be dismissed.

**b**

Defendants also challenge Seum's procedural due process claim by arguing Seum did not have a liberty or property interest taken from him and, therefore, was not entitled to any specific pre-ban process.  [R. 10-1 at 33-34.]  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "Procedural due process requires that a person be afforded notice and a right to be heard before the state deprives him of a property or liberty interest."

*Jahn v. Farnsworth*, 617 Fed. App'x 453, 459 (6th Cir. 2015) (citing *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)). "In reviewing an alleged violation of procedural due process, a court must first determine whether the party has identified a protected liberty or property interest, and then turn to whether the deprivation of that interest contravened notions of due process." *Id.* (citations omitted). Further, "to state a cognizable § 1983 claim based on the deprivation of procedural due process, conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1351.

The facts set forth in the Complaint, when accepted as true, allege the protected liberty interest, of which Seum was deprived, was his fundamental right to petition, access, and free speech. [*See generally* R. 1.] The unequivocal and permanent ban imposed on Seum was sufficiently individualized to trigger due process protections. *See Kaminski v. Coulter*, 865 F.3d 339, 347-48 (6th Cir. 2017). Those rights are constitutionally protected and, as such, demand pre-deprivation process. *See Jahn*, 617 Fed. App'x at 459. Here, Defendants claim they instituted an investigation into the LRC employee's complaint that Seum used offensive language [*see* R. 10-1 at 5], but Seum pleads facts sufficient to suggest he was never afforded notice or an opportunity to be heard on that complaint prior to his banishment [*see* R. 1 at 7-8]. The banishment letter Seum received from Defendants suggests the act of banishing Seum was intentional. [*See* R. 1-1.] Thus, Seum has sufficiently plead facts to support a claim of procedural due process.

**c**

Defendants' final 12(b)(6) argument opposes Seum's claim that Defendants abridged his privileges or immunities under the Fourteenth Amendment of the United States Constitution and Section 2 of the Kentucky Constitution. [R. 10-1 at 34-36.] In his Response, Seum implicitly

concedes this point, but maintains his due process allegations under Section 2 of the Kentucky Constitution should survive the motion to dismiss. [*See* R. 15 at 37.] Nothing in Seum's Response urges the Court to allow his privileges and immunities claims to proceed. [*See generally* R. 15.] Thus, the Court will dismiss these claims, to the extent they were plead.

**4**

Finally, while Defendants initially moved, pursuant to Fed. R. Civ. P. 12(b)(2) and (5), to dismiss the case for a lack of personal jurisdiction, that argument has become moot. On November 1, 2017, five days after Defendants filed their Motion to Dismiss, Defendants were served with a copy of the summons and complaint in this case. [*See* R. 12; R. 13.] The Court therefore finds that it has personal jurisdiction over Defendants.

**III**

In this § 1983 case, the Court finds it has subject matter jurisdiction and personal jurisdiction to hear the case. Plaintiff Seum has standing to bring his claims – which do not present a nonjusticiable political question – before the Court, and Defendants are not protected by sovereign immunity, legislative immunity, or the Noerr-Pennington doctrine. When accepting the facts in the Complaint as true, Seum has properly plead most of his claims; those claims will survive early dismissal. However, he has not plead sufficient facts to support claims of either substantive due process violations or privileges and immunities violations; those claims will be dismissed. While the Court acknowledges certain factual disputes remain regarding potentially dispositive issues, fair disposition of this case requires discovery to proceed.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss [**R. 10**] is **GRANTED** with regard to Plaintiff Seum's claim of substantive due process violations as well as his claim of privileges and immunities violations;

2. Defendants' Motion to Dismiss **[R. 10]** is **DENIED** with regard to all other claims.

This the 28th day of September, 2018.

Gregory F. Van Tatenhove
United States District Judge