UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DAN SEUM, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> David Osborne, in his official capacity as ) <br> Acting Speaker of the Kentucky House of ) <br> Representatives and Co-Chairman of the ) <br> Legislative Research Commission, ) <br> ) <br> and ) <br> ) <br> DAVID BYERMAN, in his official capacity ) <br> as Director of the Legislative Research ) <br> Commission, ) <br> ) <br> Defendants. ) | Civil No. 3:17-cv-00069-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction. [R. 17.] For the following reasons, the Court will **GRANT** Seum's Motion for a Preliminary Injunction.

**I**

Plaintiff Dan Seum, Jr., a resident of Kentucky, is a citizen advocate and was once the Director of Veteran's Affairs at Kentucky for Medicinal Marijuana (Ky4MM), "a non-profit organization working to legalize medicinal use of cannabis in Kentucky." [R. 1 at 1.] He states that on February 17, 2017, he was present on the third floor of the Capitol Annex to meet with Representative Jerry Miller in order to advocate on purposed legislation. [R. 17-1 at 4.] While awaiting his meeting with Rep. Miller, Seum engaged other advocates in conversation and, in

context, quoted a racially charged statement accredited to Harry Anslinger, a former commissioner of the Federal Bureau of Narcotics. [*Id.* at 5-6.] Seum suggests Anslinger used this rhetoric to promote the criminalization of marijuana. [*Id.* at 5.] According to Seum, "it was plain in context that Seum was criticizing Anslinger's speech and not endorsing it." [*Id.* at 6.] Approximately two weeks later, Seum received a letter from Defendant Byerman advising Seum that, at the direction of Defendant Hoover, Seum was permanently banned from the third floor of the Capitol Annex due to offensive comments Seum made in front of employees of the Legislative Research Commission (LRC). [*Id. See also* R. 1-1 at 1.]

Defendants contend Seum's recitation of "'racist propaganda' including the racially charged terms 'colored people' and 'Negroes' and the phrase that 'marijuana smoking by white women makes them want to seek sexual relations with Negroes,'" was made in the presence of a LRC employee who took offense to Seum's remarks. [R. 20 at 2-3.] Further, Defendants state that after the LRC employee complained of Seum's conduct, Defendants conducted an investigation, which substantiated the employee's claims and resulted in Seum's banishment from the third floor of the Capitol Annex. [*Id.* at 3.]

**II**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (finding that issuance of a preliminary injunction "involve[es] the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it")). To issue a preliminary injunction, the Court must balance the following factors: (1) whether the movant has shown a strong likelihood

of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Overstreet*, 305 F.3d at 573. "[W]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, 'the likelihood of success on the merits often will be the determinative factor.'" *Jones v. Caruso*, 569 F.3d 258, 265-66 (6th Cir. 2009). *See also City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). However, even where a movant fails to show a strong likelihood of success on the merits, a court may exercise its discretion to grant a preliminary injunction when "the movant has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399-400 (6th Cir. 1997) (citations omitted).

### A

Seum essentially sues on four allegations: (1) a violation of his right to petition and access the government; (2) a violation of his right to free speech; (3) First Amendment retaliation; and (4) a violation of right to due process. [*See* R. 1.] The Court will analyze Seum's likelihood of success on the merits as it relates to those claims.

### 1

For the purpose of this motion, all of Seum's substantive First Amendment claims can be analyzed together. The determination on success on the merits of these claims will turn on whether the third floor of the Capitol Annex is a designated public forum, as Seum contends, or a non-public forum, as Defendants contend. The classification of the forum will determine what level of scrutiny to apply to the governmental conduct. *See Helms v. Zubaty*, 495 F.3d 252, 256

(6th Cir. 2007) (citing *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)). When determining the forum classification, the Court may look beyond the government's explicit policies concerning the area in question and consider "the nature of the property and its compatibility with expressive activity to discern the government's intent." *Cornelius*, 473 at 802 (referencing *Widmar v. Vincent*, 454 U.S. 263 (1981)).

On the one hand, a designated public forum results when the government designates property "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Helms*, 495 F.3d at 255 (quoting *Cornelius*, 473 U.S. at 802). The Sixth Circuit has acknowledge that "[e]ven in designated public fora, the government 'is not required to indefinitely retain the open character of the facility.'" *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). Content-based governmental restrictions on designated public forums must meet strict scrutiny. *Id.* at 256. Thus, the restriction must be narrowly tailored and serve a compelling state interest. *Cornelius*, 473 U.S. at 800. On the other hand, a nonpublic forum is "public property which is not by tradition or designation a forum for public communication. . . ." *Helms*, 495 F.3d at 255. "The government's decision to restrict access in a nonpublic forum 'need only be *reasonable*, it need not be the most reasonable or the only reasonable limitation.'" *Id.* at 256 (quoting *Cornelius*, 473 U.S. 808).

Based on the record, which includes affidavits attached to Seum's Motion and exhibits attached to Defendants' Response, the Court determines that the third floor of the Capitol Annex is properly classified as a designated public forum. While the Defendants contend policy is in place to restrict access to the third floor of the Capitol Annex to members of the General Assembly, employees, and those members of the public who have obtained special access

authorization from a member or employee [*see* R. 20 at 2], Seum maintains that the third floor, and especially the lobby area of the Annex's third floor, by practice, has been used for public communication [*see* R. 17-1 at 11]. For support, Seum attaches an affidavit of Perry Clark, a current Kentucky State Senator, which states, in part, "There is no monitoring nor restriction enforced regarding access to the general areas of the Capitol Annex, including the third floor, by the general public." [R. 17-4.] It is important to note, Seum challenges the ban so that he may "seek[] access to his state Representatives, which is consistent with the purpose of the forum." [*Id.*] Defendants, as support, submit a picture which purports to show a sign restricting access to the lobby area of the Annex's third floor to legislators and staff. [R. 20-2.] However, any member of the public, with or without special access authority, would necessarily have to enter that lobby to gain further access to the office areas of the third floor. And such areas may be classified as designated public forums because the government intends those areas to be used by certain speakers, in this case those with special access authority.

Because the third floor of the Capitol Annex is deemed a designated public forum for the purposes of this motion, the governmental restriction must be analyzed. Here, the Court finds that Seum's banishment is based on the content of his speech. [*See* R. 1-1 ("This ban is . . . in response to the offensive comments that you made on February 17, 2017, in front of staff of the Legislative Research Commission.").] As such, the banishment must meet strict scrutiny. *Helms*, 495 F.3d at 256. Thus, the restriction must be narrowly tailored and serve a compelling state interest. *See Cornelius*, 473 U.S. at 800. Although Defendants state the purpose of the ban was "to avoid any potential future harassment of the LRC's employees" [*see* R. 10-1 at 5], the unequivocal and permanent ban of Seum from the third floor of the Capitol Annex suggests this restriction is not narrowly tailored to serve that state interest. Consequently, there is at least

some likelihood that Seum will succeed on the merits of his substantive First Amendment arguments.

### 2

Seum's next claim concerns First Amendment retaliation. To establish a claim of First Amendment retaliation a plaintiff must prove "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [plaintiff's] protected conduct.'" *Hill v. Lappin,* 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc)). "Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If that showing is made, the burden shifts to the defendant to show that the same action would have been taken absent plaintiff's exercise of protected conduct. *Id.*

Seum meets the three elements of the claim. First, Seum presents evidence that suggests his advocacy involves citing Harry Anslinger, the first commissioner of the Federal Bureau of Narcotics, who is attributed with the following quote:

> Most marijuana smokers are colored people, jazz musicians, and entertainers. Their satanic music is driven by marijuana, and marijuana smoking by white women makes them want to seek sexual relations with Negroes, entertainers, and others. It is a drug that causes insanity, criminality, and death—the most violence-causing drug in the history of mankind.

[R. 1 at 4.] According to Seum, "[a] recognized part of Anslinger's approach to advocating the criminalization of cannabis was an appeal to racism." [*Id.*] The Court agrees with Seum that, in context, his speech is protected political speech. *See Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 185 (6th Cir. 2008). *See also Buckley v. Am. Constitutional Law Found.,*

*Inc.*, 525 U.S. 182, 186-87 (1999) (stating that "'interactive communication concerning political change'" is "'core political speech'" and that "First Amendment protection for such interaction, we agreed, is 'at its zenith'"). Based on the content of his speech, Seum was banned, for life, from accessing the third floor of the Capitol Annex. This banishment satisfies not only the adverse action element, but also the motivation element, for a successful First Amendment retaliation claim. Consequently, there is a likelihood of success on the merits of Seum's First Amendment retaliation claim.

### 3

Seum's final claim is that his banishment was violative of the Fourteenth Amendment's due process protections. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Procedural due process requires that a person be afforded notice and a right to be heard before the state deprives him of a property or liberty interest." *Jahn v. Farnsworth*, 617 Fed. App'x 453, 459 (6th Cir. 2015) (citing *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)). "In reviewing an alleged violation of procedural due process, a court must first determine whether the party has identified a protected liberty or property interest, and then turn to whether the deprivation of that interest contravened notions of due process." *Id.* (citations omitted).

The liberty interest at stake in this case involves Seum's ability to petition and access his state legislators in their offices. The unequivocal and permanent ban imposed on Seum was sufficiently individualized to trigger due process protections. *See Kaminski v. Coulter*, 865 F.3d 339, 347-48 (6th Cir. 2017). Those rights are constitutionally protected and, as such, demand

pre-deprivation process. *See Jahn*, 617 Fed. App'x at 459. However, Seum alleges, and Defendants concede, that Seum was not afforded any opportunity to be heard prior to the banishment. [*See generally* R. 1; R. 10-1 ("Because Plaintiff did not have anything 'taken' from him by the Legislative Defendants, he was not entitled to any particular process before the restriction on his access to the third floor of the Capitol Annex was imposed.").] Thus, Seum stands a likelihood of succeeding on the merits of his due process claims.

**B**

The second part of a preliminary injunction analysis looks to whether the movant will suffer irreparable harm if the injunction is not issued. *Overstreet*, 305 F.3d at 573. Defendants argue Seum is not likely to suffer irreparable harm because "even if the Plaintiff is successful on the merits, he will have ample opportunity to advocate for his chosen issues in the future." [R. 20 at 15.] However, this argument misses the point. "[I]t is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). Thus, by the sheer nature of the violations alleged, Seum is likely to suffer irreparable harm absent the injunction being issued.

**C**

The next step in a preliminary injunction analysis examines whether the issuance of the injunction would cause substantial harm to others. *Overstreet*, 305 F.3d at 573. Defendants argue that if the Court grants the preliminary injunction they will suffer substantial harm because it would leave the Defendants with no recourse to protect the LRC employees from any potential harassment from Seum. [R. 20 at 15.] Seum charges that Defendants will not be harmed by the issuance of a preliminary injunction. [R. 17-1 at 22-23.] The Court agrees. As Seum states,

"[c]ompliance with the injunction [would] impose no effort or cost on the part of the State." [*Id.* at 22.] And, if Seum's suit fails, "the LRC will be no less able to resume the ban" following litigation. [*Id.* at 23.] During the course of litigation and period of injunction, if granted, the LRC is free to take appropriate enforcement measures against Seum should he engage in harassing or otherwise inappropriate conduct. [*See id.* at 24.] Thus, the Court finds that the Defendants would suffer no harm if an injunction is imposed during the course of litigation.

**D**

The final part of the preliminary injunction analysis evaluates whether the public interest would be served by the injunction. *Overstreet*, 305 F.3d at 573. Defendants maintain that "entry of a preliminary injunction is not in the public's interest because the state legislature must and should be able to make decisions to protect its personnel, and indeed the public at large, from harm and distress from the Plaintiff's offensive behavior. . . ." [R. 20 at 16.] Seum counters by citing the Sixth Circuit's opinion in *Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012), which states, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Bays*, 668 F.3d at 825 (citation omitted). Seum has appropriately brought his constitutional allegations, and he is likely to succeed on those claims. Therefore, on the facts of this case, the Court finds the public interest would best be served by the issuance of a preliminary injunction preventing Defendants from enforcing the ban during the pendency of this case.

**III**

This case presents a citizen advocate who has been banned from the third floor of Kentucky's Capitol Annex. This area houses office space and meeting rooms for certain Representatives and employees of the General Assembly and the Legislative Research

9

Commission. The third floor also contains a lobby area where guests must wait to be granted further access to certain other areas of the floor. It was in this lobby area where Seum, on February 17, 2017, engaged in his protected political speech that lead to Defendants unequivocally and permanently banning Seum from the Annex's third floor.

Seum asks the Court for a preliminary injunction against that ban while the litigation of this case continues. The Court finds Seum has shown a likelihood of success on the merits of his claims, but, maybe even more importantly, the Court finds Seum "has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399-400 (6th Cir. 1997) (citations omitted).

The Court recently entered an Order addressing Defendants' Rule 12 Motion to Dismiss. [**R. 22.**] While the Court analyzed much of that motion under a standard of accepting the facts as alleged in the Complaint as true, the Court's role here is different. For preliminary injunction, the Court must name specific factual findings as needed. Nonetheless, certain factual disputes remain.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Seum's Motion for Preliminary Injunction [**R. 17**] is **GRANTED.**

This the 28th day of September, 2018.

Gregory F. Van Tatenhove
United States District Judge